IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **In Re:** | ) | |
| | ) | |
| **JEREMY DWAYNE SHEARS,** | ) | Case No. 17-05308-TOM-11 |
| | ) | |
| Debtor. | ) | |

___

| | | |
|---|---|---|
| **RUFUS SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | A.P. No. 18-00152-TOM |
| vs. | ) | |
| | ) | |
| **JEREMY DWAYNE SHEARS,** | ) | |
| | ) | |
| Defendant. | ) | |

___

## MEMORANDUM OPINION AND ORDER

This case came before the Court on September 4, 2019 for a trial on the complaint filed by Rufus Smith against Jeremy Dwayne Shears, the Debtor. Appearing before the Court were Mark Erdberg, attorney for Rufus Smith; Rufus Smith, the Plaintiff; Jeremy Dwayne Shears, the Debtor/Defendant; and Felix Walton, witness for Jeremy Dwayne Shears. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(I).[2] This

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
    The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. §157(b)(2)(I) provides as follows:
    (b)(2) Core proceedings include, but are not limited to–
    . . . .
      (I) determinations as to the dischargeability of particular debts[.]

Court has considered the pleadings, the arguments of counsel, the exhibits, the testimony, and the law, and finds and concludes as follows:[3]

## FINDINGS OF FACT[4]

Mr. Smith testified that he had previously been a tenant of Mr. Shears for one or two months.[5] Mr. Smith's counsel did not ask Mr. Smith, or introduce any other testimony or evidence, about the terms of any lease arrangement between Mr. Smith and Mr. Shears.[6] According to Mr. Smith, he had been unable to make his rent payments after he was laid off from his job at Lawson State. He explained that he had gone to a temp service on the "day in question" and returned to his apartment to find the door open and his neighbors moving his belongings out of his apartment and into their cars.[7] It is unclear from Mr. Smith's testimony exactly what he contends happened. On cross examination, Mr. Shears asked him about the events of that day:

> Shears: Do you recall who all was witness to this?
> Smith: Only witness was the people, the neighbors, the guy and the girl, and you.
> . . . .
> Shears: Did you ask them why they were removing your items?
> Smith: No.
> Shears: You didn't ask them why? You just stood there and let them take your items?
> Smith: I believe that you had o – you opened the door and allowed them to take my items.

---

[3] This Memorandum Opinion and Order constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[5] At trial, Mr. Smith did not indicate the dates he rented from Mr. Shears, but according to the Complaint, Mr. Smith was a tenant "[o]n or about May 19, 2014 . . . ." AP Doc. No. 1.

[6] As a result, it is unknown whether the two had a written or verbal rental agreement, or what the terms of the agreement were; i.e., the duration (weekly, monthly, or other), the rent amount, etc.

[7] As noted later in this Opinion and Order, Mr. Smith's testimony was contradicted by Mr. Shears. Nonetheless, Mr. Smith's testimony that his belongings were put into his neighbors' cars suggests only small items such as clothes, small appliances, kitchen items, and the like were removed since large items like furniture could not have been placed in a car. The Court, however, has no way of knowing what was allegedly taken because Mr. Smith did not testify about what the items were and nothing containing this information was introduced into evidence. *See* discussion *infra*. Presumably these small items would likely not have had significant monetary value. It should be noted, however, that, assuming Mr. Smith's testimony was true, the Court recognizes the belongings would have had significant value to Mr. Smith himself.

| | | |
|---|---|---|
| Shears: | But you didn't question anything with what they were doing? | |
| Smith: | Asked them what they was doing. Looking at them. | |
| Shears: | And what did they say? | |
| Smith: | They didn't say nothing. They just stopped until you came along, 'til you showed up. | |

. . . .

Thus, this Court cannot determine whether or not Mr. Smith asked his neighbors what they were doing because his testimony changed. Further, Mr. Smith testified first that he believed Mr. Shears opened the door for the neighbors but then that the neighbors stopped moving his belongings after Mr. Shears arrived.[8] Regardless, other than admitting that Mr. Shears did not remove his belongings, Mr. Smith never indicated what Mr. Shears did while he was at Mr. Smith's apartment.

When Mr. Smith was asked if he called the police, he testified that he did not because he did not have a phone at the time. He further testified that he did not file a police report, and that did not know why. According to Mr. Smith, all of his possessions that he had at the time had been taken, and he was hurt and angry. He referenced a list that he prepared of items that were taken from his apartment along with their estimated values. He never testified as to the total value of the items that he alleges were taken but during closing arguments his counsel stated that the value was between $1100 and $1200. Although the list was marked as Plaintiff's Exhibit 11, the list was never introduced into evidence; thus, there is no evidence in the record as to what items Mr. Smith alleged were removed or the value he placed on those items.

Mr. Shears testified that he had been a licensed real estate agent and broker who had owned property in his name individually, and as an individual, he had rented out real estate. Mr. Shears testified that sometimes he has leases with his tenants, but not always, and that he has some records regarding his tenants, but not all of them.[9] Mr. Shears testified that he vaguely remembered Mr.

---

[8] The court cannot determine why Mr. Smith thought that Mr. Shears had opened the door for the neighbors since he testified that the neighbors were moving his belongings before Mr. Shears arrived.
[9] *See infra* n.8.

3

Smith being his tenant and disputed that he allowed anyone to take Mr. Smith's belongings. While Mr. Shears was questioning Mr. Smith he mentioned that he had been present when Mr. Smith's belongings were being moved out but Mr. Shears never explained why he was there, nor did counsel for Mr. Smith ask him.[10] Mr. Shears estimated that he had brought at least 100 eviction actions in state district court so he was familiar with the Alabama Landlord and Tenant Act. Counsel for Mr. Smith asked Mr. Shears if he had sent Mr. Smith a termination notice pursuant to the Act, and Mr. Shears testified that he had not.[11]

Felix Walton testified that he used to rent from Mr. Shears some time ago, and he knew Mr. Smith because they lived in the same place. He testified he was there are the time Mr. Smith's belongings were removed from the apartment, and that it was Mr. Smith himself who brought the belongings out in two or three trips. He stated that Mr. Smith placed them near the steps and walked away.[12] He walked away when Mr. Smith did.

---

[10] During closing arguments counsel for Mr. Smith asserted that this case turned on credibility, and that Mr. Shears was not a credible witness. Most of the examination of Mr. Shears by counsel for Mr. Smith focused on attacking Mr. Shears's credibility (actually, most of Mr. Smith's case-in-chief focused on Mr. Shears's credibility), often referring to testimony that Mr. Shears gave in his 2018 deposition. For example, according to counsel for Mr. Smith, Mr. Shears indicated in his deposition that he did not think he had been sued other than the suit that was discussed at the deposition. Counsel then informed Mr. Shears that he had later searched state court records and found that Mr. Shears had been sued a total of 13 times. After a break during which Mr. Shears reviewed records of the 13 lawsuits, he made clear that 11 of those suits had been brought against him by creditors, and those lawsuits helped lead him to filing bankruptcy. At another point, counsel for Mr. Smith asked Mr. Shears about his deposition testimony that he did not believe his corporation, Shears Enterprises, ever owned any real property. Counsel introduced into evidence eight state court documents entitled "Statement of Claim-Eviction/Unlawful Detainer," all listing Shears Enterprises, LLC as the plaintiff. Mr. Shears later explained that Shears Enterprises brought these suits as the management company, not as the owner. As another example, counsel for Mr. Smith sought to play for the Court a recording of a conversation he had with Mr. Shears (that had been recorded without Mr. Shears's knowledge) to show inconsistency between what Mr. Shears said on the recording and his later testimony. In the recording Mr. Shears stated that he did not keep records regarding his tenants and did not have leases with them, but at trial Mr. Shears testified that he sometimes had leases with tenants and that he had some records regarding his tenants.

[11] In his cross-examination of Mr. Smith, Mr. Shears asked him if the receipts for payments Mr. Smith paid to Mr. Shears, introduced into evidence as Exhibit 1, showed a balance due of zero. After Mr. Smith stated that they did, Mr. Shears asked him if a notice of termination was required under the Landlord and Tenant Act if the tenant did not owe any money. Mr. Smith testified he did not know the answer. It appears from Mr. Shears's question that he believed he did not have to send Mr. Smith a termination notice if Mr. Smith did not owe him any money. Unfortunately, as will be shown in this Opinion and Order, there are many missing facts and unanswered questions in this case.

[12] Although Mr. Walton did not state what items were allegedly removed from the apartment, it is logical to assume that Mr. Smith could not have removed a substantial amount of items in only two or three trips. Presumably a small

4

## CONCLUSIONS OF LAW

In the Complaint filed by Mr. Smith against Mr. Shears, he asked the Court to determine that the alleged debt owed to Mr. Smith by Mr. Shears should be excepted from discharge. Bankruptcy Code § 523 enumerates several types of debt that will be excluded from a debtor's discharge, and Mr. Smith particularly relies on subsection (a)(6) of § 523. Bankruptcy Code § 523(a)(6) provides in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
> . . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6). A plaintiff has the burden to prove by a preponderance of the evidence that a debt should not be discharged. *Grogan v. Garner*, 498 U.S. 279, 286, 11 S. Ct. 654, 659 (1991) ("[T]he preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants."). A court must strictly construe exceptions to discharge to further the Bankruptcy Code's fresh start policy. *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164-65 (11th Cir. 1995).

"[N]on-dischargeability under section 523(a)(6) requires, 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.' Reckless, wanton, or negligent acts will not suffice. The debtor must have actually intended, 'the consequences of an act, [i.e., the injury] not simply the act itself.'" *Anglin v. Wallis (In re Wallis)*, AP No. 10-00010, 2011 WL 2357365, at *10 (Bankr. N.D. Ala. Mar. 31, 2011) (Cohen, J.) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998)). According to the Eleventh Circuit:

> This Court has explained that a debtor commits a "willful" injury when "he or she

---

amount of belongings would not have significant monetary value.

commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Kane*, 755 F.3d at 1293 (quoting *Jennings*, 670 F.3d at 1334); see also *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998) (holding that § 523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury). We have determined that "malicious" means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Jennings*, 670 F.3d at 1334 (quotation marks and citation omitted). For the purposes of § 523(a)(6), "malice can be implied." *Kane*, 755 F.3d at 1294 (internal brackets, quotation marks, and citation omitted). "Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice." *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989).

*Monson v. Galaz (In re Monson)*, 661 Fed. App'x 675, 682-83 (11th Cir. 2016) (alterations in original).[13] *See also Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163 - 64 (11th Cir. 1995). To have a debt declared nondischargeable pursuant to § 526(a)(6) a creditor must prove the injury was both willful and malicious. *Wallis*, 2011 WL 2357365, at *9 - *10 (citing *Vickers v. Home Indemnity Co. (In re Vickers)*, 546 F.2d 1149, 1150 (5th Cir. 1977)).

As an initial matter, before the Court can examine whether Mr. Shears willfully and maliciously acted to injure Mr. Smith, it must first determine whether Mr. Shears acted (or caused someone else to act) at all. Mr. Smith testified that his neighbors removed his things from his apartment while Mr. Walton testified that Mr. Smith removed them himself. Mr. Shears disputed that he allowed anyone to remove Mr. Smith's belongings. Mr. Shears was admittedly present while Mr. Smith's belongings were being removed, but there is no evidence as to what Mr. Shears did at that time.[14] It seems odd that Mr. Smith would simply remove his belongings from the apartment and walk away, but it also seems odd that Mr. Smith would arrive at the apartment to find others putting his belongings into their cars and that he took no action nor tried to call the

---

[13] *Kane v. Stewart Tilghman Fox & Bianci P.A.*, 755 F.3d 1285 (11th Cir. 2014); *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329 (11th Cir. 2015)

[14] Mr. Shears indicated when he cross-examined Mr. Smith that he was present when Mr. Smith's belongings were being removed. Afterward, Mr. Shears took the stand to present his side of the dispute. Counsel for Mr. Smith did not cross-examine or ask any further questions of Mr. Shears on this topic.

6

police.  The Court is unfortunately left to consider that maybe many facts have been omitted from the story from both sides.  Further, the Court has no credible testimony from anyone as to what really happened and who did what, if anything.  Despite counsel for Mr. Smith having spent a great deal of time attempting to discredit Mr. Shears, the Court finds that none of the witnesses was more credible than any of the others.  It is impossible for the Court to determine what role Mr. Shears or Mr. Smith may have played, if any, in removing Mr. Smith's belongings.  In other words, there is no evidence that Mr. Shears took any action or had anyone take any action that caused injury to Mr. Smith.

However, even if Mr. Smith had proven he suffered an injury from Mr. Shears, it was his burden to prove that the injury that was willful and malicious for purposes of Bankruptcy Code § 523(a)(6).  Despite this, counsel for Mr. Smith never examined the elements necessary to establish nondischargeability under § 523(a)(6) at trial.[15]  In fact, counsel for Mr. Smith neither mentioned "willful" or "malicious" at all, nor offered credible testimony as to any "deliberate" or "intentional" and "wrongful" acts by Mr. Shears regarding Mr. Smith.

In order to establish willfulness, Mr. Smith had to prove that Mr. Shears intentionally acted either with the intent to cause injury or that the injury was substantially certain to occur as a result of the act.  At trial, Mr. Smith's counsel never addressed Mr. Shears's intent to injure.  The Court could engage in all manner of speculation as to what happened that day.  For example, perhaps Mr. Shears told Mr. Smith's neighbors to take Mr. Smith's belongings because he purposely wanted to keep Mr. Smith from having them.  Perhaps Mr. Shears removed Mr. Smith's

---

[15] This Court has recently had the occasion to thoroughly examine the elements of § 523(a)(6) in the case of *Ebayyah v. Jaber (In re Jaber)* in which the Court determined that the debt owed to the debtor was nondischargeable.  The case may be found on Westlaw at *Ebayyah v. Jaber (In re Jaber)*, Case No. 18-00216-TOM-13, A.P. No. 18-00052-TOM, 2019 WL 2066950 (Bankr. N.D. Ala. May 9, 2019).  A review of that case would provide guidance to a plaintiff seeking to have a debt determined nondischargeable under § 523(a)(6).

7

belongings, placing them where Mr. Smith could pick them up to move to a new location, without any intent to keep them from Mr. Smith. It is not appropriate, however, for this Court to engage in speculation and there is nothing in the record from which the Court could glean intent to cause the injury, or lack thereof. Mr. Smith has not met his burden of proving that Mr. Shears acted willfully as defined by the Eleventh Circuit Court of Appeals for purposes of § 523(a)(6).

In order to establish the "malicious" prong of § 523(a)(6), Mr. Smith would have to prove that Mr. Shears acted "wrongful[ly] and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Monson*, 661 Fed. App'x at 682-83. Assuming, for purposes of discussion, that Mr. Shears removed Mr. Smith's belongings, directed someone else to do so, or allowed someone else to do so, the Court, again, could only speculate as to what happened. Perhaps Mr. Shears removed Mr. Smith's belongings without any right to do so, in which case the removal could have been wrongful and without just case. Perhaps the removal was permissible under state statutory or common law. However, again, this Court will not speculate as to what happened, much less whether the action was wrongful and without just cause. Mr. Smith failed to offer any credible or substantial, corroborated testimony or other evidence that Mr. Shears took wrongful action without just cause; thus, he did not meet the burden of proof regarding the malicious prong of § 523(a)(6). Because Mr. Smith has not proven a willful and malicious injury, any debt that may have been owed to him by Mr. Shears was included in his Chapter 7 discharge entered April 24, 2018. As a result, it is not necessary for the Court to determine the amount or existence of a debt at all.[16]

---

[16] As already discussed at length, this Court cannot determine from the evidence presented what happened to Mr. Smith's belongings or what role Mr. Shears might have played in removing them from the apartment. The Court will also note that although Mr. Smith prepared a list of his belongings and their value, the list was not introduced into evidence, and Mr. Smith did not testify as to their value. Therefore, if the Court had determined that Mr. Smith met his burden of proof as to all of the elements, the Court had no evidence as to the value of the belongings and thus could not determine damages.

Because Mr. Smith did not prove the elements of § 523(a)(6), the Court finds that any debt owed by Mr. Shears to Mr. Smith was not excepted from his Chapter 7 discharge. It is therefore

**ORDERED, ADJUDGED, AND DECREED** that the relief sought by the Plaintiff, Rufus Smith, to declare certain indebtedness of the Debtor, Jeremy Dwayne Shears, nondischargeable in accordance with 11 U.S.C. § 523(a)(6) is **DENIED**.

Dated: October 2, 2019

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm